And I believe Mr. Sampson's a repeat player this morning. And also, I guess Mr. Saunders is going to be appearing by video, counsel for the appellant, Mr. Oakes. Mr. Saunders, can we make sure we can hear you? Yes, good morning, Your Honors. All right, and I think we can already hear Mr. Sampson. So Mr. Saunders, if you can state your name for the record when you begin, and also how much time you would like to reserve for rebuttal. You may proceed. Thank you, Your Honor. My name is Jason Saunders, I've boarded in Saunders. I'm representing the appellant, Mr. Michael Oakes. And I'd like to reserve three minutes to remain. Go ahead. Good morning, Your Honor. So this issue is whether Ms. Corey, who is the first post-conviction attorney, engaged in egregious professional misconduct, when she not only failed to file the petition on time, but then she continued false assurances and gave them all kinds of reasons why she wasn't a bad attorney. And it continued on, she never filed a federal petition at all. And then after her representation, she held on to her case file for another three months after the mandate came out. This is egregious professional misconduct in the sense that- Time, counsel. How much time after she turned over the case file to you before you filed the federal petition? She handed over at the very end of October. I filed the petition in June of the following year. I read five banker boxes of pleadings, and I also read all the materials and had to come up with a brief that I did file in the post-conviction relief in the state. Right, so that's like eight months. I'm just curious why you didn't file like a PACE-type protective petition in order to ensure that, and then ask it to be stayed until you could go and see if you needed, which apparently you did, need to go and exhaust some state claims in state court. Why didn't you file something sooner? If I remember right, in PACE, there was a five-month gap, and the Supreme Court said that that was too much. And so that's one of the challenges here for me is you had the case for eight months before you filed the federal petition. Yes, Your Honor, and I was diligently looking through the issues and seeing what I was going to file. And what I'm arguing today is really, because of Ms. Corey's misconduct, she never gave Mr. Oaks a chance at all to file a petition on time, and the court below recognized that, that he never had the chance, and that was on Mike Smith, where they had 299 days. But her conduct really made it impossible for him to file on time. And then I worked as fast as I could. I put everything off my desk and tried to file what everybody thought would have to be. And I talked to fellow colleagues who work in this kind of field of law, and they all thought that the issue had to be exhausted. So it was still- So when you ultimately did file the federal petition, did you ask for it to be, you did, it got stayed, right? And then you went back and spent some time in state court trying to get a better answer from the state court, but understandably, you were unable to. But is that what happened? You stayed the federal petition for some period of time. Exactly. Right after I filed the second petition, I asked for a stay and a bail. Yeah, I've got what I think is a legal question rather than a factual question. With respect to the filing that's one day late of the state petition, how do we gauge equitable tolling? Is that a state standard in terms of late under state law, or is that a federal standard? It seems to me that it might be a state standard in the sense of the state is deciding whether it's late under state law rather than a federal standard. That is true, Your Honor. And it is a state standard. You know, they cite to federal law as well. And I think they've become a little bit more lenient in the state courts. But the state court PRP timeline is very rigid. And we have all kinds of procedural bars that prevent you from filing on time or mixed petitions, which are separate and distinct from federal law. But for my purpose in federal court, all of those procedural problems in state court are really not the problem. The problem is Ms. Corey failed. That clock kept on ticking when she gave false assurances way back in September, the year before it was supposed to be filed and continuing on many, many times, including December 29th, 19 days before it was supposed to be filed. And then again, I think on January 13th, four days before it was supposed to be filed that it would be filed on time and there's nothing to worry about. But her pervasive misconduct continued after that. She read the state's brief and said, oh, don't worry about that. They're playing games. This is just a game. There's nothing to worry about. The court's gonna rule in our favor. And she had options. You know, I've been working as she had for decades in post-conviction relief in the state court. One of the things we can do in the state court is once you realize that your issues that are time barred are there, you can just say to the court, we hereby strike those issues and let's just decide the constitutional issue that is not time barred. So she had options that she could have represented to the court to keep that issue alive and exhausted through the state court, but she failed to do so because she had her interests above her client's interests. And I would like to talk about agency because agency is one of those things that the government has talked about. And here, you know, agency is when your attorney is actually representing you and your interests are in her heart. That's not what happened here. You know, when she continued to be pervasively aggressive in ensuring him that everything's gonna be all right, she was not looking out for his interests. She did nothing in his interests. Instead, she was looking out for- I mean, she did work really hard, it appeared to me, after she made this big mistake and obviously the sort of a fatal mistake of like blowing the deadline, but she worked really hard to, she litigated all the way up through the Washington court system, as my understanding, and just kept losing. But it seems like she worked really hard, but at the wrong time is kind of the feeling I got from reading all of this. Well, you know, first of all, let me start at that premise at the very beginning, that when you're late under the one year's time limit for a PRP, you're late. And it doesn't matter. You can file whatever you want after the fact. You can petition it all the way up to the Supreme Court, like she did. But, you know, she never blamed herself. She never blamed anybody else. She blamed the courts. She, and it was quite obvious that when she filed one day late, the state argued right away that this was just put together, had no citations to the record. It was a mess. And the court of appeals agreed with that assessment, saying it was clearly a work in progress. And then she files 12 days after a corrected PRP that had citations to the record, but also 16 pages longer than the initial. So she was nowhere close to being ready to file that petition. And with that misconduct of lying to the court and lying to her client, what she did for a motion for discretionary review or a motion to modify, just perpetuated her pervasive misconduct that she illustrated all the way through. But the worst part really was that not only did she not work in her client's interest, which is outside the scope of agency law, but she never filed a petition. And then she, when I was finally hired, she held onto that file for another 30 days, which fits and says in itself is the reason for equitable tolling. So she held onto that case file, the client's file when I was his attorney for another three months after the mandate came out for the initial PRP. Well, counsel, we've taken a little bit over what you'd hoped. You're down to two minutes. Would you like to reserve the rest of that time for rebuttal? I would, your honor. All right. I would, your honor. Thank you. We'll hear from the government again. May it please the court, John Sampson, Assistant Attorney General for the Respondent Appellee. The simple way to resolve this case, your honors, is that even if this court were to grant equitable tolling for the entire time that Ms. Corey represented Mr. Oaks in state court from the date the conviction became final on the end of direct appeal to the date the court issued the mandate denying the first PRP, the fact remains as the district court found that still another year ran, more than another year ran from that date of the end of the first PRP until the date he filed the federal petition. So the petition is still untimely even if you granted equitable tolling for the time that Ms. Corey was representing Mr. Oaks. Now, Mr. Oaks argues that Ms. Corey further delayed the process by not giving the file to his new counsel for three months until October of 2019. What that essentially is, is an argument under the old stop clock rule that you get another full year from October of 2019. But this court held in Smith v. Davis, the en banc decision, that no, the stop clock doesn't matter. Even if you have a situation where there has been some delay, you still have to look at whether petitioner was diligent in getting that petition in. And the fact that there was such a long period of time before he filed that federal petition shows that there was not the diligence and that the extraordinary circumstance did not cause the failure to file the timely petition. This is similar to the situation in Pace v. DeGilgamo where the petitioner was arguing, well, it's not fair for the petitioner to have to exhaust and then come five months later to file a federal petition and the U.S. Supreme Court said, you're not entitled to tolling for that period of time. The fact that it's not fair is not sufficient. And I would submit that the same is true in the Davis case, similar facts where the petitioner tried in that case to argue 66 days, he should be entitled to and his petition would have been timely if you give him the full 66 days and this court said, no, we have to look at, was there an extraordinary circumstance that if you had exercised diligence, would it prevent the filing of a timely petition? And they have not shown that as the court has pointed out, they could have filed a Pace petition as they did later and then returned to state court to attempt to exhaust and they did not do that. So they need, after he gets the file, he needs some amount of time presumably to prepare a Pace petition. So how much time, how much is the amount? I think he had eight months or some plus or minus. How much time do they need to file a Pace petition under your view? Well, your honor, I would submit that it's not a, there's not a bright line. Then that's what this court recognized in Smith. You have to look at the particular case. I would say that in this case, because Mrs. Corey's, it was clear by the date of the issuance of the mandate on the first collateral challenge that that was untimely. So the clock had been running. And so even though she waited three months to give her file over to him, there was still sufficient time for counsel to realize that he needed to get something into the federal court. And waiting eight months, the state's position is it's not sufficient as a matter of law. It doesn't show the diligence that is required. And that's assuming, again, that Mrs. Corey's actions were an extraordinary circumstance, which the state has argued are not. She was acting as Mr. Oak's agent under this court's case law, under the Supreme Court's case law, most recently Shin v. Ramirez, as the agent, any errors by counsel, even if they amount to gross negligence, which the failing to file a timely petition could be gross negligence, that's not sufficient because it's still attributable to the petitioner. So there is not an extraordinary circumstance shown that would entitle them to tolling. There was a question about whether it's an issue of state or federal laws to equitable tolling. The state's position is that the state law governs as to whether or not the state petition is timely and whether or not they get equitable tolling in state law or in the state court proceedings, but whether this court grants equitable tolling as a matter of federal law, although this court cannot, in doing that, simply disregard the state court's decision. In other words, this court, the state court has said that the first and second PRPs were not timely filed. The court can't ignore that, that is binding on this court. Under PACE, that's the end of the matter as far as statutory tolling, but as far as equitable tolling, the state would say that that's an issue of federal law that this court determines as a matter of federal law. Unless the court has further questions, the state would ask that this court affirm the district court's judgment. All right, no further questions for the government. Mr. Saunders, you have, I think, about two minutes for rebuttal. Oh, wait, Mr. Saunders, we can't hear you. You think I'd figure that out by now? Sorry about that, Your Honors. I do want to quickly, I want to quickly approach the difference between abandonment and misconduct. Abandonment is one of those situations where you don't give the client notice, but at least in those cases, the client is like, I've called and called and called, I haven't heard from my attorney, I don't know what's going on. And you might say, well, maybe as a matter of safety, I should go ahead and file something because my PRP is due. Where I think when you have false assurances, it's even more lack of notice, you're actually given an assurance that it will be. And to think that a person would have to file his pro se PRP just on the chance that your attorney's been lying to you all along for four months, it's just not a workable situation. This is actually worse than abandonment because she continues her misconduct all the way through. I kind of ask this too, in the prior case too, I mean, I would just assume that if I, I wouldn't assume that I need to extract from my lawyer an actual like explicit statement that I will meet the deadlines, right? I would assume that that's sort of a pretty strong implicit guarantee from every lawyer, right? Isn't that kind of the basic agreement you have with a lawyer? It's exactly right, especially if you have a flat fee like this and your flat fee is that you'll file a PRP. If that's the case, if it's sort of implicit, then I'm tired of having trouble seeing how the fact that they may have also gotten an explicit guarantee, how that somehow like takes it from ordinary negligence to extraordinary negligence or... Yeah, and I think there is something about that, right? So here's a guy in prison who's doing everything in his power to just tell his attorney, look, I just need to know, is it going to be filed on time? And that lie and deceit by the attorney is so egregious that it causes the defendant to say, well, she says that she'll file it on time, I expect her to because she's assured me now four or five times since September through January, four days before it's due. So that takes away, it's actually lies, deceit and fraud that occur unlike the normal situation. So you think, just to be clear, you think that the former counsel, I forget her name, but the former, Corey, you think she was actually lying as opposed to just incompetent and believed she was going to get it done, but you think she was actually lying? Yeah, I do, Your Honor. She has 35 years experience as a PRP attorney like I do. And so she actually, she must know at that point that she could not file a good enough PRP with citations to the record anywhere close to the due date. Okay, well, thank you, counsel. Any questions for my colleagues? All right, well, thank you to both counsel for your arguments this morning. This case will be submitted as of today.
judges: FLETCHER, VANDYKE, Liburdi